IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| HERBERT ALLEN LINCOLN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 5:16-cv-1762-TMP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**I.    Introduction**

The plaintiff, Herbert Allen Lincoln, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Mr. Lincoln timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal

---

[1] The court takes judicial notice that Nancy A. Berryhill is now the Acting Commissioner of Social Security. The Clerk is DIRECTED to change the style of the case accordingly.

Rule of Civil Procedure 73; accordingly, the court enters this memorandum opinion. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Mr. Lincon was 56 years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a high school education. (Tr. at 21, 114). He worked as a self-employed contractor for about 15 years, and he continued to do some work as a painter or carpenter in 2012 and 2013. (Tr. at 29). Mr. Lincoln claims that he became disabled on January 1, 2011, due to hypertension, dysautonomia,[2] and migraine headaches. (Tr. at 136).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id*. If he is not, the Commissioner next considers the effect of all of the claimant's physical and mental

---

[2] Dysautonomia describes various malfunctions of the autonomic nervous system that controls heart rate, blood pressure, digestion, and other involuntary functions. It is frequently accompanied by "lightheadedness, fainting, unstable blood pressure, abnormal heart rates, malnutrition and, in severe cases, death." *What is Dysautonomia?* Dysautonomia International www.dysautonomiainternational.org/page.php?ID=34) (last visited Oct. 30, 2017).

impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the

claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Lincoln has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 21). He first determined that Mr. Lincoln has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 16). According to the ALJ, plaintiff has a medically determinable impairment of hypertension, but which is non-severe. (Tr. at 16-17).

The ALJ next found the allegations that the plaintiff suffers from dysautonomia were not supported by any medical records of objective testings, signs, or diagnoses, and that Mr. Lincoln's dysautonomia is not a medically determinable impairment within the meaning of the Social Security Act. (Tr. at

17). The ALJ found Mr. Lincoln's allegations to be "not entirely credible," citing both the plaintiff's lack of medical treatment and the lack of objective evidence that confirmed the severity of the conditions or that the conditions could reasonably be expected to give rise to the symptoms alleged. (Tr. at 18). Because there was no objective medical evidence that the claimant had a severe impairment, the ALJ's analysis stopped after the second step. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ concluded his findings by stating that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. at 21).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The

Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

It is well established that the burden of showing an entitlement to benefits is on the claimant. An ALJ has a duty to develop the record beyond the evidence

presented by the claimant in some instances, but "is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2001) (finding no duty to order testing where the record contained "ample evidence"), citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). "It is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency" in the evidence that an ALJ must order an additional consultative examination. *Hollis v. Colvin*, No. 12-00659-N, 2013 WL 5567067, at * 4 (S.D. Ala. Oct. 9, 2013). Remand for further development of the record is necessary only when "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* Even then, it is up to the claimant to "show that the lack of records created an evidentiary gap, resulting in unfairness or clear prejudice." *Id.*, quoting *Edwards v. Sullivan*, 939 F.2d 580, 586 (11th Cir. 1991). The ALJ has no duty to order additional examinations where the plaintiff "did not satisfy his duty to put any alleged [] impairments into controversy by adducing competent evidence of the same." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001). Finally, Social Security Ruling 96-4P mandates that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the

individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4P, see also SSR 96-7.[3]

### III. Discussion

Mr. Lincoln was, at the time of his hearing, living with his mother and stepfather. He testified that he helped with household chores, performed yardwork, did his own laundry, and prepared his meals. (Tr. at 35). Mr. Lincoln alleges that the ALJ's decision should be reversed and remanded because the ALJ erred in failing to find that the plaintiff's dysautonomia was a medically determinable impairment. (Doc. 11, pp. 3-4).[4] He further alleges that the ALJ erred in not stating the weight given to the treating physician's opinion, and in failing to properly develop the record. (Doc. 11, pp. 4-6).

---

[3] While SSR 97-6p was in effect at the time of Mr. Lincoln's hearing, it has been superseded by SSR 16-3p. Under either analysis, however, the Commissioner is required to "have objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms" before the severity of those symptoms needs to be considered and the allegations of pain must be evaluated. SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

[4] Plaintiff has not raised any challenge to the ALJ's finding that his hypertension was not "severe." Accordingly, the court addresses only the finding that dysautonomia was not a medically determinable impairment. Although plaintiff also asserted in his application for disability benefits that he had disabling migraine headaches, there is no record of any diagnosis or treatment for migraines, and plaintiff has not raised that issue in this appeal.

The Court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In considering the plaintiff's claims that he suffers from disabling dysautonomia, the ALJ noted that Mr. Lincoln had failed to produce any "objective medical records documenting such condition and no diagnosis by an acceptable medical source [is contained] in the records." (Tr. at 17). A review of all of the medical records that have been produced demonstrate that the only references to dysautonomia are Dr. Brian James's listing of that condition in the medical history, with the notation "known to Dr. Norwood."[5] (Tr. at 183). Such notations are records of what the patient told the doctor and do not serve as evidence of any

---

[5] The plaintiff has not presented any treatment records from Dr. Norwood, and there have been no other medical records presented that refer to dysautonomia.

medical testing or diagnosis. Moreover, the same doctor's record from that visit describes the plaintiff's "dysautonomia symptoms" as "stable on Elavil."[6] No diagnosis of dysautonomia, and no laboratory findings that would support such a diagnosis, have been noted by any medical professional.[7] In fact, the only medical records referred to by the plaintiff are the treatment records of Dr. James, who apparently first saw the plaintiff in October of 2012, which was 22 months after the alleged onset date. At that visit, the doctor noted that Mr. Lincoln "feels well today with no questions, complaints, or symptoms noted." When Mr. Lincoln returned to Dr. James ninety days later for a comprehensive exam, his complaint was for "foot pain." (Tr. at 185). The doctor noted that the patient reported that his blood pressure checks "have been elevated at home consistently," and that "[h]is dysautonomia symptoms are stable on Elavil." (Tr. at 195). His next visit to Dr. James, 13 months later, described some "achiness" for which he was prescribed Salsalate[8] "as needed" to relieve the achiness. (Tr. at 191).

---

[6] Elavil is a prescription medication, generically known as amitriptyline, that is usually prescribed to treat depression. "Elavil Uses, Dosage & Side Effects" Drugs.com https://www.drugs.com/elavil.html (last visited October 30, 2017).

[7] Even if the record were sufficient to demonstrate that the plaintiff was diagnosed with dysautonomia, a diagnosis alone is not sufficient to support a claimant's allegations that an impairment is severe, and objective medical evidence must support a finding of severity. *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

[8] Salsalate is described as a "non-steroidal anti-inflammatory drug (NSAID) in a group of

What is most notable, or at least unusual, about Mr. Lincoln's case is the paucity of medical treatment that he sought or received for any complaint. His medical records consist of pharmacy records from Wal-Mart dated January 2012 through July 2013 (tr. at 168-75); handwritten treatment notes from an unidentified source dated December 2008 through May 2011 (tr. at 176-81);[9] and the treatment notes described *supra* from visits to Dr. James on October 10, 2012, January 10, 2013, and February 19, 2014 (tr. at 182-97).

A review of the entire decision demonstrates that the ALJ's determination is supported by substantial evidence. The decision was both comprehensive and consistent with the applicable SSA rulings. The plaintiff did not meet his burden of offering any substantial basis for concluding that his dysautonomia allegations were supported by any objective medical evidence, and the evidence in the record was not in conflict, ambiguous, or incomplete such as might trigger the ALJ's duty to order additional examination. The ALJ properly noted that there were "no medical

---

drugs called salicylates ... [that] works by reducing substances in the body that cause pain, fever, and inflammation [and that] is used to reduce pain, swelling, and joint stiffness caused by arthritis." "Salsalate: Indications, Side Effets, Warnings" Drugs.com https://www.drugs.com/salsalate.html (last visited Oct. 30, 2017).

[9] Plaintiff's counsel does not identify or refer to this unidentified doctor's treatment of plaintiff in his supporting brief or his reply. The court cannot decipher most of the handwritten notes, but it does appear that Mr. Lincoln was receiving prescriptions for Elavil as early as 2009. Dr. James, in his first meeting with Mr. Lincoln, stated that the patient was establishing care after "their physician, Dr. Sarrels, retired." (Tr. at 182). There are no other references to Dr. Sarrels.

source statements or opinions from any of the claimant's health care providers in the record regarding his ability to function physically." Nowhere in the record is any evidence that Dr. James actually diagnosed Mr. Lincoln with dysautonomia, much less the medical limitations it might cause. (Tr. at 20). Plaintiff's assertion that the ALJ failed to ascribe a given weight to Dr. James's opinion is without foundation because Dr. James did not give any "opinion" relating to Mr. Lincoln's ability to work, and the ALJ clearly evaluated all of Dr. James's treatment notes. The record was sufficient to form a basis for the ALJ to make an informed decision. Accordingly, the ALJ's determination is due to be affirmed.

## IV.  Conclusion

Upon review of the administrative record, and considering Mr. Lincoln's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

DATED the 24th day of January, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE